BUSHNELL STEVENS, Appellant, *v.* JOHN HAUSER, Re-
SPONDENT.

*Ejectment—Possession of intermediate Grantee—Adverse possession—Burden of
proof—Rights of Assignee in Bankruptcy—Limitation.*

In ejectment, if the title of a party, from whom, by mesne conveyances, the
Plaintiff's title is deduced, be admitted or established, it is not necessary to
prove his possession. Such possession is presumed, and the burden is cast
upon the Defendant, if he so claims, to establish an adverse possession.

Nor, in such case, is it necessary for the Plaintiff to prove actual possession
in any of the intermediate grantees through whom he derives his title, nor his
own possession under the paper title.

The mere production of deeds, without any proof of possession under any
one of them, does not ordinarily establish title; but, where the title of one of
the grantors is admitted or established, the burden is not upon the Plaintiff of
proving possession in the subsequent grantees.

A conveyance is not to be held void (under our statute declaring a deed of
land held in adverse possession void) on mere proof that, at the time of such
conveyance, the lands were in the possession of the Defendant.

It seems that a conveyance by an assignee in bankruptcy, under the laws
of the United States, made in pursuance of a sale by order of Court, would
not be void by force of our statute, even if the land was held in adverse pos-
session.

The Act of Congress, limiting the assignee in bankruptcy to two years within
which to bring actions, has no application to a cause of action arising in his
own favor for injury to property, or a disseizin of lands vested in him by the
proceedings.

A mere tort feasor cannot, in an action against him by such assignee or his
grantee, impeach the title of the assignee by proof of irregularity in the pro-
ceedings in bankruptcy, or in the order of sale.

This is an action of ejectment brought in the Superior Court,
New York, to recover possession of a lot of land on Forty-sixth
street, New York. Action commenced 22d June, 1861. Answer,
a general denial. On the trial before the Court and a jury, 26th
February, 1863, a verdict was ordered for the Defendant, subject
to the opinion of the Court at General Term. The General Term
ordered judgment for the Defendant, and made a statement of facts.

The facts, as disclosed on the trial, were : The lot was No. 182, on the Hermitage Farm. The said farm was in the actual occupation of John L. Norton, as reputed owner from 1803 to 1815 or 1816, when he let it out, and collected rent for it until 1825, when he conveyed it to Henry Lynch. Lynch conveyed certain lots, including that in question, to Clarke; Clarke conveyed to Kelly; and, in 1835, Kelly conveyed to Seaman, who, in the same year, conveyed to D. B. Talmadge.

On the 10th December, 1842, said Talmadge was duly declared a bankrupt, and W. C. H. Waddell was appointed his assignee. On the 19th June, 1861, Waddell, as such assignee, reported to the Court an application to obtain the interest of the bankrupt in said lot and another lot, for a nominal consideration, and the costs of the assignee and his counsel, the title being of no pecuniary value to the estate. On the same day, 19th June, 1861, an order was made, that the assignee should convey the interest of the bankrupt in said lots. On 20th June, 1861, the assignee gave a deed for said lots, which deed recited the decree in bankruptcy, the orders appointing the assignee, and the order to sell, and then conveyed to the Plaintiff, the Appellant, in fee, all the right, title and interest of the bankrupt in said lot 182, and another lot. It further appeared that Defendant first went into the occupation of the premises 16 or 17 years before the trial. Some years before the trial, he quitted the possession, remained absent about two years, and came back under a lease to his wife, and was in possession when this action was brought.

The Plaintiff rested, and Defendant's counsel moved to dismiss the complaint, on the grounds : First, that there was no sufficient authority to the assignee to sell; second, that Defendant was in possession hostile to the rights of the Plaintiff during the two years allowed him to set up his right of title, and he did not do it, so that it is too late for him now to commence this action. These were the only grounds upon which the motion to dismiss was based, and it was the validity of these objections which was submitted to the General Term.

From the judgment of the General Term, ordering judgment for

the Defendant upon the verdict, an appeal is taken by the Plaintiff to this Court.

*John Townshend* for the Appellant.

*George W. Stevens* for the Respondent.

WOODRUFF, J.—The verdict in this case having been taken by consent, subject to the opinion of the Court upon the questions of law, we are to take it as conceded that there is no disputed question of fact in the case.

The facts, therefore, upon which the questions of law arise, are to be found in the "statement of facts," settled by the General Term of the Superior Court, upon which the judgment appealed from proceeded.

By these it appears that, in 1825, the title to the premises in question was in one John L. Norton; that being established, his possession is to be presumed, for proof of title is primâ facie sufficient, and casts upon him who resists a claim under that title the burden of proving adverse possession. Where a party is under the necessity of proving title, it is not enough to simply produce a deed; he must show possession in the grantor, or possession accompanying the deed; without this, he proves no title. But when, as matter of law and fact, it is found or conceded that a party named has title, that is sufficient—his possession is presumed; and the occupation by any other person is presumed to be in subordination to the legal title, unless it appear that the premises have been held adversely to such legal title for twenty years before suit brought. (Code, § 81.)

It further appears, that the title shown to be in John L. Norton, in 1825, was deduced from him to the bankrupt Daniel B. Talmadge. It was not necessary to show that he was in actual possession, for the same reason given in respect to Norton. The Respondent attaches unwarranted importance to the fact that the bankrupt was not shown to have been in possession. The Plaintiff was not bound to show that. The onus was not on him. If it was material to the Defendant that the bankrupt was not in possession, the Defendant must prove it. Although it is some-

times necessary to show some possession or exercise of acts of ownership importing possession, in order to establish title, yet, when it is once found or established that a party has title, he who relies upon a disseizin must prove it.

The same observation applies to the assignee in bankruptcy; and it is not stated nor proved, that, when the title became vested in him, there was any adverse possession.

The defendant's possession, if it had been continuous, did not commence until four years after the title was vested in the assignee; and there was not, therefore, at that time, any subsisting cause of action to which the limitation of two years contained in the bankrupt act (5 U. S. Stat. at Large, p. 446, § 8) could apply. There was no " adverse interest," and no " person claiming an adverse interest," touching any property of the bankrupt which was vested in such assignee.

He held this real estate, upon the facts stated, in full property, and, presumptively, in full possession, and it was wholly unnecessary to prove affirmatively anything more.

Whether the assignee duly executed his trust in selling the property for a nominal consideration might be an interesting question, if creditors of the bankrupt had, in due season, called it in question, but the Defendant has nothing to do with that inquiry. He is, upon the facts stated, either a mere tort feasor, intruding upon the premises four years after the title passed to the assignee, or he went into possession, and held for about eight years under the assignee, which is, perhaps, the legal presumption.

The cause of action, therefore, did not arise until several years after the decree in bankruptcy; and I fully agree with the views ascribed to Mr. Justice Nelson (In the Matter of Conant, not reported; MS., May 26, 1862), that the two years' limitation has no application to a cause of action which was never vested in the bankrupt, but arises out of a wrong done to the assignee himself, or to the property vested in him. This is, I think, the necessary construction of the statute, for there was no adverse interest to which it can apply; and, for wrongs done

to the assignee, there is, as suggested by Judge Nelson, no reason for applying that limitation, when it concerns dealings with the assignee himself.    The ground upon which four of the members of this court place the decision in Cleveland *v.* Boerum (24 N. Y. 613) is in harmony with this view.

But it is insisted, that, at the time of the execution and de-livery of the deed by the assignee in bankruptcy to the Plaintiff, the Defendant was in adverse possession, and the deed to the Plaintiff is void on that ground by our statute, which enacts, that every grant of land shall be void, if, at the time of the delivery thereof, such lands shall be in the actual possession of a person claiming under a title adverse to that of the grantor.    (R. S., Part II., Chap. I., Title II., Art. 4, Edm. ed., Vol. I., p. 690, § 147.)

1. No such fact is found.    The original possession of the Defendant is in entire harmony with the title of the assignee in bankruptcy ; mere possession in another is not enough to defeat a deed.    The burden was upon the Defendant to show that the possession was adverse.    It is not even found that he claimed title.    He may have been in under the assignee, or as a mere intruder, without claim or pretence of right.

So, as to his subsequent possession, "he came into possession under a lease to his wife."    It is, at least, doubtful whether this warrants any assumption that this was adverse to the assignee ; no claim of title to any one is shown.

2. But without resting upon this, I am clearly of opinion that our statute has no application to a judicial sale ; and the sale by the assignee is of that nature.    It was a sale by order of the Court.    (See 4 Kent's Com. 447 ; Tuttle *v.* Jackson, 6 Wend. 213 ; Truax *v.* Thorn, 2 Barb. S. C. 156 ; Co. Litt. 214, *a;* Frizzle *v.* Veach, 1 Dana, 211 ; Violett *v.* Violett, 2 id. 323 ; Jarrett *v.* Tomlinson, 3 Watts & Sergeant, 114 ; Allen *v.* Hoyt, Kirby, 221 ; Barney *v.* Cutler, 1 Root, 489.)

The other objections to the jurisdiction of the Court in bankruptcy, and the power to appoint a general assignee, and to order a sale in the manner stated, do not arise on the statement of facts, nor do I think they are available to the Defendant.    The Court

had jurisdiction of the subject-matter, and of the person of the bankrupt, and, if there was any defect or irregularity, it is to be impeached, if at all, by a direct proceeding, and cannot be availed of by this Defendant as an impeachment of the title acquired thereby.

I think the judgment must be reversed, and judgment ordered for the plaintiff, with costs.

BACON, J.—As the case is made up, it is very questionable whether it is in a form to be passed upon by this Court. At the close of the Plaintiff's evidence, it is stated that the counsel for Defendant moved to dismiss the complaint, on the ground that there was no order sufficiently authorizing the assignee to sell, and that the Defendant was in possession hostile to the rights of the Plaintiff during the two years allowed him to set up his right of title, and he did not do it, so that it is too late for him now to commence this action. Instead of granting or denying this motion upon either of the grounds stated, the case recites, that, by consent of counsel, a verdict was taken for Defendant, subject to the opinion of the Court at General Term.

When the case came into the General Term, a statement of facts was drawn up, and two conclusions of law appended thereto, as the judgment of the Court. In these, no notice is taken of the objection, that the assignee had no sufficient authority to sell. In respect to the other objection, touching the Defendant's possession, nothing is found in regard to the alleged hostile character of that possession, nor as to the time of its commencement, except that it was 14 or 15 years prior to the commencement of the suit, and that it consisted of his moving on to the premises, and building a house, which he subsequently sold, and was gone from the premises for two years, when the house was burned; that two years after the house was burned, he came again into possession of the premises under a lease to his wife, and was in possession when the action was commenced.

There is nothing in all this indicating any possession either under a claim of title or in hostility to that of the true owner.

The Plaintiff showed a perfect paper title in himself, and was not obliged to prove possession,—certainly not against a mere squatter, which is all the possession the facts as found tend to prove in the Defendant originally. Who the lessor of his wife was, is not stated, nor does it anywhere appear in the evidence on the trial. For aught that is shown, it may have been the Plaintiff or his grantor.

The conclusions of law which the Court found were: First, that the cause of action, if any, was perfected at the date of the decree in bankruptcy; viz., on the 19th of December, 1842. Second, that more than two years having elapsed since the cause of action was perfected, and before the commencement of the action, the Plaintiff cannot recover.

Waiving the point whether there has not been a mistrial, it is entirely clear to my mind that these conclusions are erroneous. What is the bar the statute creates, and to what parties is it applicable? The bar relied upon is the one established by the eighth section of the bankrupt law of 1841, which provides that no suit at law or in equity shall be maintainable by or against the assignee in bankruptcy, or by or against any person claiming an adverse interest, touching the property and rights of property of the bankrupt, unless the same shall be brought within two years after the declaration and decree of bankruptcy, or after the cause of action shall first have accrued. The findings of the Court are, that the cause of action in this case accrued in December, 1842. If this case is within the statute, then the limitation expired in December, 1844, and within that period Waddell, the assignee, should have brought his action, or he and his grantees would be forever barred.

But by or against whom must the action be brought? The statute says, " by or against any person claiming an adverse interest " touching the property of the bankrupt. Now, in 1844, the Defendant was not in possession of these premises, nor was any one else, so far as any testimony discloses, and no such claim is made by the Defendant's counsel. He only insists, in his points, that the Defendant was in possession adversely to Wad-

dell & Co., Plaintiffs, for sixteen or eighteen years. In this he is manifestly mistaken. The Defendant swears he was in possession sixteen or seventeen years before the trial, which took place in February, 1863, and the statement of facts is, that he moved on to the premises fourteen or fifteen years before the commencement of the suit, which was in June, 1861. So that, at the utmost, he only went on to the premises in 1846, two years after the period of limitation prescribed by the statute. There was consequently no person claiming an adverse interest against whom any action could possibly be brought by the assignee within the time prescribed. The Plaintiff in this suit only obtained his title in June, 1861, and brought the suit immediately thereafter, so that no bar whatever can be claimed against him.

But, in my judgment, the statute in question has no application whatever to a case of this kind. In the words of Judge Nelson, in a case where he was called to interpret the eighth section: " It is obvious that the limitation only applies to suits growing out of disputes in respect to property and rights of property of the bankrupt, which came to the hands of the assignee, and to which adverse claims existed while in the hands of the bankrupt, and before the assignment. These disputes affected the assets of the bankrupt, and an adjustment of them, either by compromise or suit, was indispensable to a settlement of distribution of the assets among the creditors." This is a very just construction of the statute, and gives effect and meaning to this provision. The case of this Defendant is not at all within its terms or intent. At the time of the assignment he set up no claim to the property involved in this suit; he had none, and pretended to none against the bankrupt, prior to the assignment; and the bar of the statute has, therefore, no application to this case. Nothing to the contrary of this was held in the case of Cleveland *v.* Boerum (24 N. Y. 613), but the opinions of the judges, given in that case, harmonize with the view of Judge Nelson, as above stated, because it distinctly appeared in that case, that the interest of the mortgagee, which was adverse to that of the assignee of the bankrupt, was not only in existence at the time of the assignment, but the

mortgage was due, and was in process of foreclosure, and the assignee had actual notice of the pendency of that proceeding at the time of the vesting of the property of the bankrupt in the assignee.

The counsel for the Defendant makes the point that the sale by Waddell to the Plaintiff was void, for the reason that the Defendant, at the time of the conveyance, was in possession of the premises, holding adversely to Waddell. There are three sufficient answers to this. The point was not taken on the trial, nor passed upon by the Court in any stage of the case; it is very questionable whether the Defendant was holding adversely at that time; at any rate, the fact is neither proved nor found; and the rule that forbids the sale of real estate out of the possession of the grantor, and in that of a party holding adversely under a claim or pretence of title, does not apply to judicial sales, as was the one by Waddell in this case. (Truax *v.* Thorn, 2 Barb. S. C. 156; Hoyt *v.* Thompson, 5 N. Y. 320.)

The judgment should be reversed, and judgment absolute ordered for the Plaintiff, with costs.

MASON, J.—The Court below based its decision upon the two years' limitation imposed by section 8 of the bankrupt act of 1841 (5 U. S. Stat. at Large, p. 446), and held that statute a bar to the action.

This eighth section provides, that "No suit at law or in equity shall, in any case, be maintained by or against such assignee, or by or against any person claiming an adverse interest touching the property and rights of property aforesaid, in any court whatsoever, unless the same shall be brought within two years after the declaration and decree of bankruptcy, or after the cause of suit shall have accrued." (5 U. S. Stat. at Large, 446, § 8.) This statute has no application to the case at bar, for several reasons. In the first place, the design and object of this eighth section, fixing this two years' limitation, was only intended to apply to suits in respect to property and rights of property of the bankrupt which came to the hands of the assignee, and to which

adverse claims existed while in the hands of the bankrupt, and before the assignment.

Such suits, in regard to such disputed claims, affected the assets of the bankrupt, and an adjustment of them, either by compromise or suit, was indispensable to a settlement and distribution of the assets among the creditors, and this was the great object of this enactment, to facilitate this speedy settlement and distribution of the bankrupt.

In the second place, there is not a particle of evidence in the case to show that the Defendant ever set up any claim of title to these premises against Talmadge, or the assignee, Waddell. It is true, he was in the possession eight or nine years, and built a house on the premises, and sold the house, as the case states, but as far as the case shows, he did not set up any claim to the land, and, from the fact that he assumed to sell the house without the land upon which it stood, affords very strong evidence that he did not even claim the land, and especially as he left the premises on the sale of the house. The fact that he returned some two years before the commencement of this suit, and entered under a lease to his wife, is also evidence that he did not claim to own the premises. The case does not show from whom this lease was obtained, and, in the absence of all proof upon the subject, the law will indulge the presumption that he entered in subordination to the true legal title.

It seems that the Defendant first went into possession under one Ewen, by hiring the premises from him, but the case fails to show any connection of Ewen with the title, or that Ewen ever set up any claim of title, adverse to that of the Plaintiff.

The case, in short, fails to show that the Defendant or any one else claimed to hold these premises adversely, or under a title adverse to either Waddell or the Plaintiff, and consequently this two years' statute has no application. The Plaintiff showed an unbroken chain of title from 1803 down to the commencement of this action, and the presumption in law, in the absence of all proof, is, that the leases to the Defendant and his wife were in subordination to the legal title. (Code. § 81.) And, again, this

eighth section of the bankrupt act, prescribing this two years' statute of limitations, never was to bar the right of entry as against a purchaser from the assignee in bankruptcy, where the bankrupt actually had the title, and the assignee sold and conveyed it by order of the Court. It was never intended to limit this action of ejectment, in such a case, to two years. The proceedings and orders of the court authorizing the assignee to sell and convey are valid, and it follows that a new trial must be granted.

It is, perhaps, questionable, as the titles to real estate are regulated and controlled by State statutes, and as those statutes allow the citizen twenty years in which to bring his action, whether an act of Congress, which deprives the owner of lands of his right of entry, or limits his right to two years, can be sustained; but it is not necessary to place the case on this ground.

The construction which has been put upon section 265 of the Code, by the Court, seems to limit the right to direct a verdict subject to the opinion of the Court at General Term, to cases where the facts are undisputed and no exceptions have been taken upon the trial; and this rule has been very stringently enforced in the Supreme Court, and fully sustained in this Court, as will be seen by reference to the following cases: Bell *v.* Shibley (33 Barb., S. C. 610); Beebee *v.* Ayres (28 id. 276); Bangs *v.* Palmer (16 How. Pr. 542); Cobb *v.* Cornish (16 N. Y. 602); Gilbert *v.* Beach (id. 606; 2 Bosw. 365); Purchase *v.* Matteson (25 N. Y. 211; S. C. 15 Abb. 402; 10 Bosw. 564; 7 id. 414).

There does not seem to be much propriety in holding this a mistrial, as regards the Plaintiff, for all the rulings in regard to evidence were in his favor, and he was allowed to give all his evidence, and consented that a verdict be directed subject to the opinion of the Court at General Term, and I do not see how the Plaintiff can have been in the least prejudiced. (City Bank of Brooklyn *v.* McChesney, 20 N. Y. 240.)

A new trial, however, must be granted, for the reasons above stated.

Judgment reversed. JOEL TIFFANY,
State Reporter